Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 6324 | DATE | 10/30/2002 |
| CASE TITLE | Brenda George vs. Evanston Northwestern Healthcare | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order: We dismiss George's complaint for failure to state a claim on which relief may be granted. Consequently, we deny George's motion to proceed in forma pauperis (4-1). We also deny plaintiff's motion for appointment of counsel (5-1) as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 0 1 2002 | |
| | Notified counsel by telephone. | | date docketed | 6 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/30/2002 | |
| GL | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | GL mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRENDA GEORGE )
)
Plaintiff, )
v. ) Case No. 02 C 6324
)
EVANSTON NORTHWESTERN )
HEALTHCARE, et al. )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Plaintiff Brenda George's motion to proceed *in forma pauperis* and motion for appointment of counsel in her complaint against Defendants Evanston Northwestern Healthcare ("ENH") and Dr. Norman Simon. For the reasons stated below, both motions are denied and the complaint is dismissed.

I. BACKGROUND[1]

Mrs. George worked as a secretary in the Division of Nephrology at ENH from February 5, 2001 until she was terminated the week of September 10, 2001.[2] Throughout the course of her employment, Dr. Simon served as the Head of the Division. In September 2002, Mrs. George filed a complaint against ENH and Dr. Simon pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. Mrs. George alleges that Dr. Simon subjected her to sexual

---

[1] The following background information is culled from Mrs. George's complaint.

[2] ENH employed Mrs. George through Randstad, a temporary employment agency, from February 5, 2001 to June 25, 2001. ENH hired Mrs. George as a permanent employee on June 26, 2001.



harassment and submits that ENH and Dr. Simon retaliated against her for rejecting what she perceived to be Dr. Simon's sexual advances.

Mrs. George alleges that Dr. Simon began to harass her after she wed her husband in early May 2001. She states that upon returning to work on May 9, 2001, Dr. Simon "grabbed my face and kissed me on my right cheek."[3] Mrs. George yelled at Dr. Simon, who, according to Mrs. George, responded "you always . . . kiss the bride." She characterizes Dr. Simon's behavior as "offensive and insulting." Mrs. George continued to work as a temporary employee after the incident occurred. On June 26, 2001, nearly two months after the incident, ENH hired Mrs. George as a permanent employee.

Mrs. George claims that during her employment with ENH, she caught Dr. Simon "leering" at her on "numerous occasions." Mrs. George does not specify the dates on which Dr. Simon supposedly engaged in this behavior. In the one incident of leering that Mrs. George describes, she contends that Dr. Simon was standing in the doorway of her office staring at her "in a trance-like" manner. Mrs. George explains that she "felt naked" and believed that Dr. Simon was imagining "that he was having sex with me at that very moment." She asked Dr. Simon "if something was wrong," to which she says he responded "no." Mrs. George felt "violated, humiliated, and uncomfortable." She went to the bathroom "to regroup and . . . pray."

While working for ENH, Mrs. George "periodically" received visitors during business hours. One of those visitors was Carey Smith, a male ENH employee. Sometime after June 26, 2001, Sloan Muir, an ENH administrator, spoke to Mrs. George about Mr. Smith. Ms. Muir apparently related Dr. Simon's concern that Mr. Smith's visits were keeping Mrs. George from her work. Mrs. George,

---

[3]Mrs. George claims that Sue Sakurai of the Equal Employment Opportunity Commission (EEOC) told her that Dr. Simon did not deny that he kissed her on the cheek.

2

however, theorizes that Dr. Simon took issue with those visits because Mr. Smith "was attracted to me and was not shy about making that known."

George claims that Dr. Simon and ENH retaliated against her for rejecting what she perceived to be Dr. Simon's sexual advances. Mrs. George avers that Dr. Simon began to find fault with her job performance shortly after ENH hired her as a permanent employee on June 26, 2001. When Dr. Simon was unable to reach Mrs. George at the office by telephone on the afternoon of June 29, 2001, he accused her of having left work early. Mrs. George had "a big argument" with Dr. Simon "because he felt he was right," even though she denied the accusation. In July 2001, Mrs. George says Dr. Simon criticized her for failing to maintain a Division of Nephrology calender on which the doctors could schedule time off and special events. Mrs. George suggests that the calender was unnecessary. Dr. Simon was purportedly critical of Mrs. George when, on an unspecified date, she was unable to tell him the location of a meeting he was scheduled to attend. Mrs. George explains that she assumed Dr. Simon knew of the location.

Mrs. George states that on July 19, 2001, ENH administrator Shanel Gaines informed her that Dr. Simon was not satisfied with her job performance. She told Ms. Gaines that Dr. Simon's criticism was "very unfair" because "I did not have any formal training." Mrs. George writes that on August 16, 2001, Dr. Simon notified her that he was extending her probationary period from 90 to 120 days because her job performance had not improved. Mrs. George does not, however, disclose why she was initially put on probation. On September 10, 2001, Ms. Muir delivered a termination letter, purportedly at Dr. Simon's request, to Mrs. George. Mrs. George was asked to remain on the job until September 14, 2001 so that ENH could hire her replacement.

Later that day, Dr. Simon allegedly asked Mrs. George about her termination. Mrs. George told Dr. Simon she felt it was "very unfair." She claims that Dr. Simon suggested that Ms. Muir "did

3

not have the last say so on the matter." Mrs. George responded by saying she had tired of his harassment, exemplified by the time he had criticized her for not knowing the name of the president of ENH. She went on to tell Dr. Simon that he was "a mean little old man." Dr. Simon reportedly told Mrs. George "to go ahead and get on out" of the office. On September 11, 2001, Mrs. George learned of two employment opportunities in the office of the president at ENH. Although Mrs. George interviewed for both positions, she withdrew her name from consideration for personal reasons. Mrs. George worked in the Division of Nephrology, as requested, through September 14, 2001. She subsequently filed this action and moved to proceed *in forma pauperis* and for appointment of counsel.

## II. DISCUSSION

### A. Standard of Review

Before granting leave to file *in forma pauperis* under 28 U.S.C. §1915, we must first determine whether or not a plaintiff's allegation of poverty is untrue. After that determination, we must conduct an initial review of the plaintiff's claims and dismiss the action if we find that (1) it is frivolous or malicious; (2) it fails to state a claim on which relief may be granted; or (3) it seeks damages from a defendant who is immune from such relief. See 28 U.S.C. §1915(e)(2)(A), (B)(i)-(iii). An affirmative answer to any of these factors requires us to dismiss the action. As to the second factor, failure to state a claim, we apply the criterion found in Rule 12(b)(6) that dismissal is warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Finally, where, as here, a plaintiff is proceeding *pro se*, we have a special responsibility to construe the complaint liberally. *See Donald v. Cook County Sheriff's Dep't.*, 95 F.3d 548, 555 (7th Cir. 1996). Indeed, it is the "well-established duty of the trial court to ensure that the claims of a *pro se* litigant are given a fair and meaningful

4

consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428-29 (7th Cir. 1987) (citations omitted). As a threshold matter, we believe George's allegation of poverty to be true. Nonetheless, even viewing the complaint liberally, we find that it fails to state a claim on which relief may be granted.

**B.     Sexual Harassment Claim**

In order to maintain an actionable claim for sexual harassment under Title VII, a plaintiff must demonstrate that her co-worker or supervisor harassed her because of her sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). The harassment must be "so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (citation omitted). The Supreme Court has characterized a hostile work environment as one that is "both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787. As the Seventh Circuit has noted, "Title VII does not prohibit all verbal or physical harassment in the workplace." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002). Consequently, "isolated and minor incidents of questionable conduct generally will not warrant a conclusion of sexual harassment." *Id.*

It is clear from Mrs. George's complaint that she considered Dr. Simon's conduct to be so severe and pervasive as to make her work environment hostile and abusive. In determining whether Dr. Simon's conduct actually created an objectively hostile work environment, we examine the frequency and severity of the conduct as well as whether it unreasonably interfered with Mrs. George's work performance. *See Faragher*, 524 U.S. at 787-88 (setting forth the factors a district court may consider when evaluating whether the conduct at issue was objectively offensive). Despite Mrs. George's subjective perceptions, we find that an objective person would not view her work environment as hostile

5

or abusive. Dr. Simon's conduct was neither frequent nor severe. Furthermore, even Mrs. George does not allege that Dr. Simon's behavior unreasonably interfered with her work performance.

Dr. Simon kissed Mrs. George on the cheek once – after she returned to work from her wedding. When George yelled at Dr. Simon, he purportedly responded by saying "you always . . . kiss the bride." Compl. ¶2. Even if Dr. Simon inappropriately congratulated Mrs. George on her marriage, a reasonable person would not find that Dr. Simon's conduct created a hostile work environment. Mrs. George's complaint reveals that Dr. Simon never touched or even attempted to touch her again. *See* Compl. ¶¶1-2. Dr. Simon's conduct did not appear to interfere with Mrs. George's work performance. In fact, as Mrs. George points out, ENH hired her on a permanent basis after the incident occurred. *See id.*

Although Dr. Simon purportedly leered at Mrs. George on "numerous occasions," she recounts only one incident of such behavior in her complaint. Compl. ¶5. Mrs. George claims to have knowledge of what Dr. Simon was thinking on that occasion. Dr. Simon did not gesture or speak to Mrs. George so as to provide George with that knowledge. *See id.* Instead, Mrs. George independently concluded that Dr. Simon, while starting at her in "a trance-like" manner, was imagining "that he was having sex with me at that very moment." *Id.* We do not believe a reasonable person would draw a similar conclusion, let alone determine that the conduct created an objectively hostile work environment. The leering Mrs. George describes was neither frequent nor severe. Although Mrs. George avers that Dr. Simon's behavior made her feel "uncomfortable," she does not claim that it unreasonably interfered with her work performance. *Id.* Indeed, she asserts that she was wrongfully terminated *despite* successfully performing her job duties. *See* Compl. ¶¶6-10; 12-13.

Mrs. George's final allegation of sexual harassment pertains to Dr. Simon's objection to the visits she received from a male ENH employee, Carey Smith, during business hours. *See* Compl. ¶4. Sloan Muir, an ENH administrator, spoke to Mrs. George about those visits, apparently relating Dr. Simon's

6

concern that Mr. Smith was keeping Mrs. George from her work. *See id.* Mrs. George, however, perceives that Dr. Simon took issue with Mr. Smith's visits because Mr. Smith "was attracted to me and was not shy about making that known." *Id.* Mindful of our obligation to assess this claim in the light most favorable to Mrs. George, we question whether Dr. Simon's concern regarding Mrs. Smith's visits can be characterized as an effort to demean Mrs. George on account of her sex. Nonetheless, even if we accept Mrs. George's assessment of the situation, we do not find that a reasonable person would believe that Dr. Simon's objection created a hostile work environment. Dr. Simon's single objection certainly does not qualify as having been frequent or severe. In addition, Dr. Simon's concern about Mr. Smith's visits did not unreasonably interfere with Mrs. George's completion of her job duties. To the contrary, Smith's absence provided Mrs. George with an opportunity to improve her work performance.

Each individual allegation of harassment Mrs. George submits in her complaint does not establish an actionable claim for sexual harassment under Title VII. The same is true even when considering the allegations as part of a broader pattern of conduct by Dr. Simon. We must therefore conclude that Mrs. George's complaint does not state a claim for sexual harassment on which relief may be granted.

### C. Retaliation Claim

To establish a retaliatory action claim under Title VII, a plaintiff must show that she participated in protected activity, that she suffered an adverse employment action, and that there is a causal connection between the adverse employment action and her protected activity. See *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). Mrs. George suggests that Dr. Simon criticized her job performance and that she was ultimately fired for "having rejected sexual harassment." Compl. ¶ 9. Yet such an allegation, even if true, is insufficient to establish a Title VII retaliation claim. Under 42 U.S.C. §§2000e-3(a), it is unlawful for an employer "to discriminate against any of his employees

... because he has opposed any ... unlawful employment practice." The denial of a superior's sexual advances, however, is not the type of "opposition" to an unlawful employment practice contemplated by the provision. *See Speer v. Rand McNally & Co.*, 1996 WL 667810 at *8, n. 4 (N.D.Ill. Nov. 15, 1996) (finding that the "refusal ... of sexual advances ... is not the type of 'protected activity' which is properly the source of a Title VII retaliation claim."). *But see Murray v. Chicago Transit Auth.*, 252 F.3d 880, 890 (7th Cir. 2001) (noting the issue, finding no Seventh Circuit precedent, and declining to address the question).

The purpose of the anti-retaliation provision is to prevent employee grievances and Title VII claims from being deterred. *See Heuer v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000). George does not allege, however, that Dr. Simon and ENH retaliated against her for complaining to her superiors or for filing this complaint. Rather, Mrs. George alleges that the Defendants retaliated against her because she refused what she perceived to be Dr. Simon's sexual advances. As a result, we conclude that Mrs. George's complaint does not state a claim for retaliation on which relief may be granted.

### III. CONCLUSION

For the foregoing reasons, we dismiss George's complaint for failure to state a claim on which relief may be granted. Consequently, we deny George's motion to proceed *in forma pauperis*. We also deny as moot her motion for appointment of counsel. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated  10/30/02

8